## FAMOUS SMITH *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 1003.　Submitted November 15, 1893. — Decided January 8, 1894.

A Cherokee Indian being indicted in the Circuit Court of the United States for the Western District of Arkansas for the murder of a white man, it was set up in defence that the murdered man was also an Indian, and that the court was therefore without jurisdiction. The evidence for the defence showed that the murdered man was generally recognized as an Indian, that his reputed father was so recognized, and that he himself was enrolled, and had participated in the payment of bread money to the Cherokees. To offset this the government showed that he had not been permitted to vote at a Cherokee election, but it also appeared that he had not been in the district long enough to vote. *Held*,

(1) That the burden was on the prosecution to prove that he was a white man;

(2) That the testimony offered by the government had no legitimate tendency to prove that the murdered man was not an Indian.

This was a writ of error to review the conviction of the plaintiff in error for the murder of one James Gentry, alleged to have been " a white man and not an Indian," on August 1, 1883, in the Cherokee Nation, Indian Territory. The case was tried before the Circuit Court of the United States for the

Western District of Arkansas at the May term of 1893, and the prisoner convicted and sentenced to death. Thirty-four assignments of error were contained in the record, none of which were considered except the first and last, which raised the question of the jurisdiction of the court, arising from the fact that both the accused and the deceased were Indians.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Whitney,* for defendants in error, to the point on which the case turns in this court, said:

We do not understand that there is any difference between civil and criminal cases as to the necessity of presenting questions properly to this court, or as to the mode in which they should be presented, except where there may be some specific statutory provision relating to one or the other class of cases. Its decisions, since it received general criminal jurisdiction, seem to recognize that it exercises no wider jurisdiction than is given by the ancient practice with relation to writs of error. *Alexander* v. *United States,* 138 U. S. 353, 355; *Moore* v. *United States,* 150 U. S. 57; *Holder* v. *United States,* 150 U. S. 91.

Can the jurisdictional question be now raised, not having been raised at the trial? It was conceded at the trial that the evidence was conflicting. The only objections raised by the prisoner's counsel in this regard were objections to remarks of the court in submitting the evidence to the jury. Can this court decide that evidence was not conflicting which was admitted at the trial to be conflicting? It is familiar law that in civil cases jurisdictional objections may be taken by the court itself. This, however, results from statutory provisions applicable only to civil cases, and before these provisions were enacted the law upon the point was regarded as uncertain. Act of March 3, 1875, c. 137, § 5; *Williams* v. *Nottawa,* 104 U. S. 209, 211. For criminal cases there is no such statute. Except as to jurisdictional objections, there seems to be no doubt that the court, upon a writ of error, can

look into the bill of exceptions only to decide questions which are raised by a specific exception. The only points that can be raised here without an exception are errors or defects in the other portions of the record; that is, matters not resting on parol, such as those discussed in *Slacum* v. *Pomery*, 6 Cranch, 221, 225; *Garland* v. *Davis*, 4 How. 131; *Bennett* v. *Butterworth*, 11 How. 669; *Suydam* v. *Williamson*, 20 How. 427, 433; *Rogers* v. *Burlington*, 3 Wall. 654, 661; *New Orleans Railroad* v. *Morgan*, 10 Wall. 256, 260; *Insurance Co.* v. *Piaggio*, 16 Wall. 378, 386; *Clinton* v. *Missouri Pacific Railway*, 122 U. S. 469, 474; *Moline Plow Co.* v. *Webb*, 141 U. S. 616, 623. A bill of exceptions, as we understand the practice, is intended only to present the testimony bearing upon specific exceptions taken, and cannot be turned into a statement of facts for any other purpose. *Pomeroy's Lessee* v. *Bank of Indiana*, 1 Wall. 592, 602; *Hanna* v. *Maas*, 122 U. S. 24, 26. But see *Bassett* v. *United States*, 137 U. S. 496, 501; *East Tennessee &c. Railroad* v. *Southern Telegraph Co.*, 125 U. S. 695.

To decide whether Gentry was an Indian at all, it would be necessary first to ascertain the presumption in the absence of evidence. The evidence on the point is not controlling either way. It may be classed under three heads: First, statements of Gentry himself to various parties; second, general, though not universal, belief of his neighbors, based on his own statements; third, his personal appearance. We do not find any decision fixing the presumption in such a case in the absence of proof. The general rule is, however, that if the defendant belongs to a class of persons not subject to the jurisdiction of the court, that fact is not one to be negatived by the indictment or declaration, but one to be set up affirmatively by a plea or answer. Thus it has never been supposed that one should negative in declaration or indictment the possibility of defendant's being a foreign minister or consul. See also 1 Bishop Crim. Proc. § 513. It would be almost impossible to administer justice in the Indian Territory if the District Attorney were obliged to prove affirmatively the American citizenship of the defendant. The Territory is swarming not only

with quarter-breeds, but with whites, who have a rightful claim to citizenship; it swarms also with white men who claim such citizenship without a shadow of foundation. If the *onus* of proving which nation he really belongs to is cast upon the criminal, the courts are far more likely to obtain accurate information on the subject.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

This case, so far as we have found it necessary to consider it, raises but a single question, namely, whether, Smith being admitted to be a Cherokee Indian, born and raised in the Cherokee Nation, and a citizen of that nation, the undisputed testimony did not also show Gentry to have been an Indian.

If this were the case, then it is clear the court had no jurisdiction of the offence. By Rev. Stat. § 2145, (c. 4, Tit. 28,) relating to the "government of Indian country," it is provided "that except as to crimes the punishment of which is expressly provided for in this Title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country." But by § 2146, as amended by the act of February 18, 1875, 18 Stat. 318, c. 80, "the preceding section shall not be construed to extend to crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offence in the Indian country who has been punished by the local law of the tribe, nor to any case where, by treaty stipulations, the exclusive jurisdiction over such offences is or may be secured to the Indian tribes respectively." As we held in *In re Mayfield*, 141 U. S. 107, there is nothing in the treaty of July 19, 1866, between the United States and the Cherokee Nation, 14 Stat. 799, which renders this statute inapplicable or indicates that the Circuit Courts of the United States have jurisdiction of crimes committed by one Indian against the person or property of another.

Upon this point a number of witnesses were sworn, who all stated that Gentry claimed to be a Cherokee Indian, and looked like one, having the dark hair, eyes, and complexion of an Indian, and that he was generally recognized as one. Kajo Gentry, his reputed father, appears to have been either of Cherokee blood or mixed Creek and Cherokee. He also was recognized as an Indian, and appears to have been enrolled and participated in the payment of " bread money " to the Cherokees.

The only testimony to the contrary tended to show that, in 1883, Gentry was not permitted to vote at an election held in the Cherokee Nation, but it also appeared that it was because he had not been in the district long enough. To entitle him to vote at an election he must not only have been a citizen of the Cherokee Nation, but must have resided in the particular district where he offered to vote six months prior thereto. There was also some testimony tending to show that Gentry had lived for some time, but it does not appear how long, in southern Arkansas, and came to the Cherokee Nation by the way of the Choctaw Nation.

In this connection the court charged the jury in substance that, to give the court jurisdiction, it was necessary to charge in the indictment that Gentry was a white man and not an Indian. "The meaning of that is, that he was a citizen of the United States; or, more correctly speaking, a jurisdictional citizen of the United States." That if he were, notwithstanding the defendant was an Indian, the court still had jurisdiction. That in this connection it was important " to ascertain whether he has been recognized legally by the authorities of that country as a citizen thereof." That "if a man is an Indian by blood, and if he goes out and lives among the white people, abandons his country, lives among white people, who are citizens of the United States, and performs the duty belonging to citizenship, or exercises the rights that pertain thereto, that that is evidence on his part of a purpose to abandon the relation he may have to that country and to its people, and he may abandon it in that way so as to cause him to become a jurisdictional citizen of the United States." That

the jury also had a right to consider that, if he were related there, his relatives took no interest in him when killed, etc. Exceptions were duly taken to this portion of the charge.

That Gentry was a white man, and not an Indian, was a fact which the government was bound to establish, and if it failed to introduce any evidence upon that point, defendant was entitled to an instruction to that effect. Without expressing an opinion as to the correctness of the legal propositions embodied in this charge, we think there was no testimony which authorized the court to submit to the jury the question whether Gentry was a white man and not an Indian. The objection went to the jurisdiction of the court, and if no other reasonable inference could have been drawn from the evidence than that Gentry was an Indian, defendant was entitled, as matter of law, to an acquittal. *Pleasants* v. *Fant*, 22 Wall. 116; *Commissioners of Marion County* v. *Clark*, 94 U. S. 278; *Marshall* v. *Hubbard*, 117 U. S. 415.

The testimony offered by the government had no legitimate tendency to prove that he was not an Indian. The evidence that he was not permitted to vote in the Canadian district, where the murder was committed, was explained by the fact that he had not resided in the district the six months required by law to entitle him to vote, and by the fact that one of the judges of election told him that he had no doubt that he was an Indian. Nor did the fact that Gentry said he lived in southern Arkansas, without any evidence showing how he came to live there, under what circumstances, or how long he lived there, constitute any evidence of his being a white man, or that, being an Indian, he had severed his tribal relations and become a citizen of the United States.

It was held by this court in *Elk* v. *Wilkins*, 112 U. S. 94, that an Indian, born a member of one of the Indian tribes within the United States, which still exists and is recognized as a tribe by the government of the United States, who has voluntarily severed himself from his tribe, and taken up his residence among the white citizens of a State, but who has not been naturalized, taxed, or recognized as a citizen, either by the State or by the United States, is not a citizen of the

United States within the Fourteenth Amendment of the Constitution. Much more is that the case where it appears that the Indian was but temporarily a resident of a State, the length of his residence not being shown, and that he had done nothing to indicate his intention to sever his tribal relations.

Upon the testimony in this case, we think the defendant was entitled to an instruction that the court had no jurisdiction, and its judgment must, therefore, be

*Reversed, and the case remanded with directions to set aside the verdict, and for further proceedings in conformity with this opinion.*