**PAPE v. UNITED STATES.**

Circuit Court of Appeals, Ninth Circuit.
April 18, 1927.

Rehearing Denied May 16, 1927.

No. 4991.

1. **Indians** ⊂⊐13(1)—Indian woman does not lose rights in tribal property by marriage with white man (Act March 3, 1865, 13 Stat. 562; Comp. St. §§ 4103–4105, 4195 et seq., 4611).

Under Act March 3, 1865, 13 Stat. 562, Act March 3, 1875 (Comp. St. § 4611), Act Feb. 8, 1887 (Comp. St. § 4195 et seq), and Act Aug. 9, 1888 (Comp. St. §§ 4103–4105), an Indian woman does not lose her right to tribal property or funds by contracting marriage with a white man, though she has severed her tribal relations, has become a citizen, and has taken up the ways of civilized life.

2. **Indians** ⊂⊐13(1)—Children of Indian woman, married to white man and having abandoned tribe, held not entitled to rights in tribal property (Comp. St. § 4106).

The provision of Act June 7, 1897, § 1 (Comp. St. § 4106), giving children of an Indian woman, recognized as a blood member of a tribe, theretofore married to a white man, the same rights in tribal property as other members of the tribe, held not to apply to children of an Indian woman who, after passage of the act, married a white man, abandoned the tribe, and adopted the customs and habits of civilized life; such children never having been recognized as members of the tribe.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by Eugene K. Pape, by Elsie Wilson Pape, his guardian ad litem, against the United States. From the decree, complainant appeals. Affirmed.

Stuart H. Elliott and H. G. & Dix H. Rowland, all of Tacoma, Wash., and John T. Welsh, of South Bend, Wash., for appellant.

Thomas P. Revelle, U. S. Atty., and Arthur E. Simon, Asst. U. S. Atty., both of Seattle, Wash., and Bertil E. Johnson, Asst. U. S. Atty., of Tacoma, Wash.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. This is a suit in equity, brought by Elsie Wilson Pape, guardian ad litem, under the Act of August 15, 1894 (28 Stat. 305, as amended, 31 Stat. 760 [Comp. St. § 4214]), to secure allotments of Indian lands for her children.

Elsie Wilson Pape, formerly Elsie Hawk, appellant, was a full-blood Indian, born in 1889 at Bay Center, an Indian village on Shoalwater Bay, Washington, where she resided until 1915. In July, 1903, she married Clarence Wilson, a white man, by whom she had three children (plaintiffs in this suit), Ernest C., Dorothy J., and Pearl A. Wilson. In 1908 or 1909 Elsie was recorded as a Quinaielt Indian allottee. Prior to her allotment she had never lived on the reservation. In 1914 Elsie married Clyde Pape, a white man, at South Bend, Wash., and shortly thereafter they moved to Tacoma. In June, 1915, she and her husband moved to the Quinaielt reservation, where, with the consent of the Indian agent, they built a house and lived, and Elsie was given a fishing location on the Quinaielt river within the reservation. About March, 1916, they moved to Montana, but in 1917 returned to Bay Center, where they remained until the spring of 1918, when they moved to Tacoma, where they have since lived. In February, 1922, appellant, Eugene K. Pape, was born at Tacoma.

The District Court held that the children of the first marriage were entitled to allotments, but that Eugene Pape was not. Appeal was taken in behalf of Eugene.

[1] Under the several acts of Congress pertinent to the subject, an Indian woman does not lose her right to tribal property or funds by contracting marriage with a white man (Act March 3, 1865, 13 Stat. 562; Act March 3, 1875, 18 Stat. 420 [Comp. St. § 4611]; Act Feb. 8, 1887, 24 Stat. 388 [Comp. St. § 4195 et seq.]; Act Aug. 9, 1888, 25 Stat. 392 [Comp. St. §§ 4103–4105]); and such is the rule, notwithstanding the fact that the woman has severed tribal relations, has become a citizen, and has taken up the ways of civilized life. The policy evidenced by the acts cited being one of encouragement to Indians to take up the ways and customs of civilized life, it is made plain to them that in doing so they will have saved to them any rights they may have to share in tribal or other property. In carrying out this policy, Congress, by Act of June 7, 1897 (30 Stat. 90 [Comp. St. § 4106]), provided that all children born of a marriage theretofore solemnized between a white man and an Indian woman by blood, and not by adoption, where the Indian woman

was then or at the time of her death recognized by the tribe, have the same rights and privileges to the property of the tribe to which the mother belonged or belonged at the time of her death by blood, as any other member of the tribe, and that no prior act of Congress should be construed as to debar such child of said right.

[2] That statute, although it conferred a right upon the children of an Indian woman whose condition brought her within the terms of the act, did not bestow such right upon children of marriages contracted after passage of the act, nor upon the children of a mother not recognized as one of the tribe at the time of her marriage or death. We find no authority to sustain the construction that, when an Indian woman married a white man after the act of 1897, and thereafter abandoned her tribal relations and adopted the customs and habits of civilized life, children born to her after such abandonment, who have never been recognized as members of the tribe to which the mother belonged, have the same rights as the mother would have had if she had been affiliated with the tribe at the time of her marriage.

The case of Oakes v. United States (C. C. A. 8) 172 F. 305, is close to that before us. Jane Oakes was the daughter of a full-blood Chippewa Indian. She was a member of the Chippewa Tribe, enrolled and recognized as such from the time of her birth until 1849. In 1829 she married Oakes, a white man, and lived with him at a trading post in the Chippewa country until 1849, when they removed from the reservation and went to St. Paul, where Oakes engaged in business until 1879. A daughter, Jane, was born to them in the Chippewa country in 1841; that is, some eight years before Mrs. Oakes and her husband left the Chippewa country. Jane was enrolled and recognized as a member of the Chippewa Tribe. She was twice married to white men, and had two children, Jane Andrews and Cornelia Van Etten, who were born and reared in St. Paul. Neither of the children was ever enrolled or recognized as a member of the Chippewa Tribe. Each child married a white man. The grandmother, Mrs. Oakes, and the mother, Jane, abandoned their tribal relations after they went to St. Paul, and adopted the customs, habits, and manners of civilized life; but at times they visited with members of the Chippewa Tribe. Mrs. Oakes and her daughter and granddaughters each applied for allotments of land in the Indian reservation. The Circuit Court of Appeals decided that Jane Oakes, the grandmother;

and Jane, her daughter, were entitled to the allotments prayed for, but it denied allotments to Jane Andrews and Cornelia Van Etten, the granddaughters, who were born and raised in St. Paul. Mrs. Oakes and her daughter were held to have been within the saving provisions of the Acts of Congress of March 3, 1875, supra (U. S. C. S. § 4611), and the Act of Feb. 8, 1887, c. 119, supra; hence were entitled to share in the allotment as though they had maintained their tribal relations; but Jane Andrews and Cornelia Van Etten, daughters of Jane, who never were members of the tribe, were held to be not entitled to derive any benefit from the acts of Congress cited.

In applying the views of the court in that case to this, Eugene Pape's position is like that of Jane Andrews and Cornelia Van Etten. Eugene's mother, Elsie, like Mrs. Oakes and her daughter, Jane, was recognized as a member of an Indian tribe; the child, Eugene, like Jane and Cornelia, never was enrolled or recognized as a member of the tribe. In both cases, too, the mothers of the children abandoned tribal life and adopted the customs, habits, and manners of civilized life prior to and after the birth of their children.

Appellant can gain nothing by contending that Elsie never abandoned her tribe, but left the Quinaielt reservation involuntarily. The clear fact is that she left of her own free will with her white husband, and took up the customs and habits of civilized life long before Eugene was born. The circumstances that in 1915 she and her husband returned to the reservation, and that the agent gave her a fishing location, which proved to be of no value, loses significance, when we consider that she remained on the reservation only a short time, and then left to take up the ways of civilized life.

Neither is it material that, after she established her home in Tacoma, she visited relatives living on the reservation. In Reynolds v. United States (D. C.) 205 F. 685, Estella Reynolds was a member of the Sioux Tribe, born of a full-blood Indian mother and white father within the reservation, where she affiliated with the Indians and was recognized as a member of the tribe until 1877, when she was taken away to be educated. After leaving the reservation, she adopted the customs, habits, and manners of civilized life, and in 1881 married a white man and lived apart from the Indians. Her mother continued to live among the Indians, and was often visited by Estella; but the children of Estella never affiliated with the Indians, and never were recognized by the Indians, nor the officers of the reservation, as members of the tribe. The District Court, citing the Oakes Case, supra, held that Estella was entitled to share in the tribal property, but that her children were not.

In Vezina v. United States (C. C. A.) 245 F. 411, and in U. S. ex rel. Besaw v. Work, 55 App. D. C. 391, 6 F.(2d) 694, cited by appellant, the marriages between the Indian women and their white husbands were contracted before the passage of the act of 1897, supra. The cases are irrelevant.

Our conclusion is that the status of Eugene follows the condition of his father, and that the decree of the District Court must be sustained. Smith v. Bonifer (C. C.) 154 F. 883.

Affirmed.