CASE 118—PETITION EQUITY—MARCH 8.

# First National Bank of Stanford v. Mattingly, &c.

APPEAL FROM LINCOLN CIRCUIT COURT.

1. ANY CONCEALMENT FROM A SURETY, BY THE CREDITOR, of material facts, or any express or implied misrepresentation of facts, or any undue advantage taken of the surety by the creditor, either by surprise

or by withholding proper information, will furnish sufficient ground to invalidate the contract.

2. Misrepresentations to Surety.—A surety for the purchase price of property, unlike the purchaser himself, has the right to rely upon the seller's representations to him as to its value, and if he is induced to become bound by the seller's misrepresentations in that respect, he is entitled to be discharged from his obligation in any case in which his ultimate responsibility may depend upon the actual value of the property.

Where a surety in a note executed for a part of the purchase price of a mill was induced to sign the note by the representation of the vendor that the mill had for a given period been operated at a certain profit, when the vendor knew that it had, during the period mentioned, been operated at a loss, the representation being made for the purpose of inducing the surety to sign the note, and with the knowledge upon the part of the vendor that the surety believed that the principal would be unable to pay the note except with profits realized from the operation of the mill, the surety is not bound.

3. Same—Constructive Fraud.—When fraud is charged, proof or admission of misrepresentation or concealment of material facts will, without any regard to the intent to deceive him, make a case of constructive fraud, requiring the creditor to repel the legal deduction by proof of integrity of the transaction.

4. Same.—A surety can not escape liability upon the ground of misrepresentation by the creditor about a matter of which he himself had full knowledge, and, therefore, when he relies upon misrepresentations by the creditor as a defense, he must allege that he was ignorant as to the matters about which the representations were made.

5. Same.—A false representation as to a matter of intention, not amounting to a matter of fact or to an agreement, is not a fraud at law, nor does it afford ground for relief in equity.

A representation by the vendors of a mill to one who was about to become the surety of the purchaser for the purchase money, that they would furnish the purchaser with money to stock and operate the mill, was but a representation as to a mere matter of intention, and, although false, does not entitle the surety to be discharged from his obligation.

6. Same.—The vendors having represented to the surety at the time he signed the note, that the notes for the balance of the purchase money, executed by the purchaser alone, were made payable three, four and five years after date, without reservation or condition, the fact that there was subsequently inserted in the deed, without the knowledge or consent of the surety, a provision whereby all the notes became due and collectible, and the lien therefor enforceable, three years after date, thus cutting off the profits of the mill relied on by the surety two years sooner than could have been done under the contract as rep-

resented to him, entitles him to be discharged from his obligation, provided the representation was made with the intention that he should act upon it, and he was thereby, in whole or in part, induced to execute the note.

### WM. LINDSAY FOR APPELLANT.

1. The attention of the jury should have been confined to such representations as were material to the contract of suretyship, and such as the appellee professed to have relied on and had the right to rely on. He had no right to rely on the representations as to value.
2. The court should have instructed the jury to consider only the specific averments of fraud, and also informed them in what legal fraud consists. (Foard v. McComb, 12 Bush, 725.)
3. Any change of the contract to which the surety is a party, will release him if made without his consent. But not so as to the change of another and collateral contract between the creditor and principal debtor, except where the creditor has notice of the fact that the surety entered into the contract of suretyship upon the faith and with the expectation that the collateral contract shall be carried out as first agreed upon.

### HILL & McROBERTS ON SAME SIDE.

1. Whenever the surety seeks to be discharged from his obligation by the same matter which would release his principal, then the law holds the surety to the same legal responsibility as the principal.

   The surety can not be released upon the ground that he was deceived by the creditor as to the value of the property sold, when he had the power of judgment and failed to exercise it. (Moore v. Turbeville, 2 Bibb., 604; Lighthern v. Cooper, 1 Dana, 273; Marshal v. Beck, 1 Dana, 609.)
2. A representation of an unexecuted intention is never binding. (Brandt on Sureties, sec. 351; Gage v. Lewis, 68 Ill., 604; Municipal Council of Middlesex v. Peters, 9 Up. Can., C. P. B., 205; Towle v. National Guardian Association Society, 3 Giff., 42; Hubble v. Murphy, 1 Duv., 278; Murphy v. Hubble, 2 Duv., 249.)
3. If a change is made by the contracting parties in some part of the contract to which the guaranty of the surety does not extend, then such change does not necessarily release the surety. (Roach v. Summers, 20 Wall., 165.)
4. Where the fraud or defense pleaded constitutes an equity against the contract, then the fate of the surety must follow that of the principal. If the principal sees proper to waive a defense and affirm the contract as in this case, then the grounds set up will not avail the surety, for the reason that the surety can not disaffirm the contract and be released from his obligation, whilst the principal affirms the contract and retains the fruits of his bargain. (Brand on Sureties, sec. 201;

Brown v. Wright, 7 Mon., 396; Ross v. Close, 3 Dana, 195; Evans v. Keland, 9 Ala., 42.)

WELCH & SAUFLEY OF COUNSEL ON SAME SIDE.

O. H. WADDLE, FRANK HUBBLE, ROBERT HARDING FOR APPELLEE.

1. If a party taking a guaranty from a surety conceal from him facts which go to increase his risk and suffer him to enter into the contract under false impressions as to the real state of things, such concealment will amount to a fraud.   (Story's Eq. Jur., vol. 1, secs. 211, 212, 213, 214, 215, 218, 323, 324 and 325; Ruffner v. Ridley, &c., 81 Ky., 618; 78 Ky., 430; Burks v. Wonterline and wife, 6 Bush, 22; Pomeroy's Eq. Jur., sec. 878.)
2. There was a material alteration of the contract which released the surety.
3. The relation of creditor and surety is one of trust and confidence demanding the utmost good faith on the part of the creditor.   (Aaron v. Mendel, 78 Ky., 430; Parsons on Notes and Bills, 236; Brandt on Suretyship, secs. 201, 348, 350, 352, 361, 365 and 366.)
4. In pleading fraud it is not necessary to specifically aver the facts constituting the fraud.   (Evans v. Stone, 80 Ky., 79.)
5. All the acts and circumstances surrounding the transaction must be grouped together to test the presence or absence of fraud.   (Castle v Bullard, 23 How., 172.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, the First National Bank of Stanford, being owner of a parcel of land, on which was a planing-mill and elevator, sold it November 3, 1884, to R. T. Mattingly for $13,000, payable as follows : $1,000 November 3, 1885, S. Hubble being surety on the note therefor, about which there is now no controversy ; $3,000 November 3, 1886, Appellee Levi Hubble being surety on the note therefor, the subject of this litigation ; and $9,000 in equal installments, evidenced by notes of Mattingly above, November 3, 1887, 1888 and 1889, to secure payment of which a lien on the property was reserved, and in relation to which there was a provision in the deed, that in case he failed to pay on November 3, 1887, all the

notes then due and the accrued interest, the whole debt was to be considered and acted on as then payable.

There having been failure to pay the annual interest accrued up to November 3, 1885, on the note for $3,000, executed by Mattingly and appellee, appellant instituted this action against them to recover $180, amount thereof. Judgment was rendered by default against the former, but the latter made defense, and the action remained undetermined until April 19, 1889, when a supplemental petition was filed wherein was prayed judgment for principal of the note, that had, in meantime, become due, and additional interest. The grounds of defense as stated by appellee are in substance :

1. That he executed the note as surety merely, being, as were officers of appellant who made sale of the property, aware of insolvency of Mattingly; and they also knew he so executed it believing Mattingly would be unable to meet payment of the note, except with profits expected to be realized by operation of the mill; yet, for the fraudulent purpose of inducing him to become surety they represented to him the mill, when operated, had capacity to earn a profit of $600 per month, when having full knowledge of its value and condition they knew it could not be operated except at a great loss to its owner; and that Mattingly had just before the sale operated it for one month, as a renter from appellant, at a net profit of $600, the proceeds having been handled and expenses paid through one of appellant's directors, when they knew he had in fact operated it for the period mentioned at a loss of near $500; and that they fraudulently deceived and procured Mattingly to confirm that representation as true.

2. That they, for the purpose mentioned, represented to appellee the property was worth $13,000 and they had been offered that price for it by an experienced mill-man, who had examined it, but preferred selling to Mattingly because he was a home man, when in fact it was not worth more than $6,000, and such offer had not been made.

3. That said officers knowing it was necessary for Mattingly to have capital with which to stock and operate the mill, represented to appellee, they would, when the sale was made, for that purpose, furnish him with from $2,000 to $3,000 without security ; yet, knowing appellee had been induced to sign the note believing they would do so, they failed and refused to furnish any capital to him, and by reason thereof he was unable to operate the mill.

4. It is further stated that at the time appellee signed the note, they represented to him the three notes executed by Mattingly alone, were made payable three, four and five years after date, without any reservation or condition ; yet, without appellees knowledge or consent, the provision heretofore mentioned was afterwards made in the deed whereby all the notes became due and collectible November 3, 1887.

It is averred in the answer in respect to each representation mentioned, that it was falsely and fraudulently made before appellee signed the note, and he was by reason thereof induced to do so. A demurrer to each paragraph as we have numbered them was filed, but overruled as to all but the third, to which it was sustained; nevertheless, the court upon motion to strike out the allegations contained in it ruled they were traversible and a reply thereto should be filed.

The general doctrine applicable to this case as quoted from Stoɾy's Equity Jurisprudence and approved in Burks v. Wonterline, 6 Bush, 20, is thus stated: "The contract of súretyship imports entire good faith and confidence between the parties in regard to the whole transaction. *Any concealment of material facts,* or any express or *implied* misrepresentation of facts, or any undue advantage taken of the surety *by the creditor,* either by surprise or by withholding proper information, will undoubtedly furnish sufficient ground to invalidate the contract." Moreover proof or admission of misrepresentation or concealment of material facts, "when fraud is charged by the surety, will, without any regard to the intent to deceive him, *malo animo,* make a case of constructive fraud requiring the creditor to repel the legal deduction by proof of the integrity of the transaction." (Burks v. Wonterline).

In the practical application of the doctrine just mentioned the following rule is laid down in Brandt on Suretyship and Guaranty, section 401, upon authority of cases cited, Woolley v. Louisville Banking Company, 81 Ky., 527, being one of them: "If any material part of the transaction between the creditor and his debtor is by the creditor or with his knowledge or consent misrepresented to the surety, the misrepresentation being such that but for the same having been made, either the suretyship would not have been entered into at all, or being entered into the extent of the surety's liability might be thereby increased, the surety is in such case generally held to be not bound by his obligation."

Applying that rule we think the facts stated in the first paragraph of the answer constitute a defense. For

the alleged representation was not merely in respect to supposed capacity of the mill to earn a monthly profit of $600, but of a fact within personal knowledge of one of the officers of appellant, that it had, when operated by Mattingly, actually yielded that amount; about which, as alleged, appellee was ignorant, and Mattingly had been deceived by that officer. That the earning capacity of the mill was a material part of the transaction between the parties in view of Mattingly's known inability to meet payment of the note sued on, except with profits made by operating it, there can, it seems to us, be no question.

The well settled rule is, as argued, that mere commendation, or even false representation, by the seller of property as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no effect on legal rights of the contracting parties, even when made with intention to deceive. (Marshall v. Peck, 1 Dana, 609.) But that rule does not apply to conduct of a seller to the surety of the purchaser; for a surety is not required to ascertain for himself condition or value of property sold to his principal, but may rely entirely upon representation made by the seller to him as to even its value; and if induced by his misrepresentation in respect thereto to become bound for purchase money, he would be entitled to discharge from the obligation in every case when upon the actual value of property sold may depend his ultimate responsibility. But a party can not be regarded having been deceived or misled by another, unless he was at the time ignorant or uninformed on the subject of alleged misrepresentation; and it would be misapplication of the rule

Vol. 42—92.

to permit a surety to escape payment of a note signed voluntarily and with his eyes open, upon the ground of misrepresentation by a seller or creditor about a matter he himself had full knowledge of. It is distinctly enough stated in the second paragraph of the answer that officers of appellant were well acquainted with condition and value of the mill property, but not averred appellee was not also acquainted therewith. And because of that omission the demurrer to that paragraph, we think, ought to have been sustained.

The defense stated in the third paragraph is not made to rest upon any contract or argument between the officers of appellant, and either appellee or Mattingly, nor misrepresentation of any material facts, but upon what, it seems to us, amounts to no more than a mere expression of intention on part of appellant to furnish Mattingly, without security, a capital of $2,000 to $2,500 with which to stock and operate the mill, that was not carried out. If appellant's officers had falsely represented to appellee it had agreed with Mattingly to so furnish the capital, or if it had as consideration or inducement for his becoming surety agreed with appellee to furnish it to Mattingly, there would be no question of his right to release from the note; for in either case his rights and interest as surety would have been materially affected by bad faith of appellant. But a false representation as to a matter of intention, not amounting to a matter of fact, nor to an agreement, is not a fraud at law, nor does it afford ground for relief in equity; there being a well recognized distinction between it, and both a false representation of fact and a representation that amounts to an engagement. (See Kerr on Fraud and Mistake, 88–9). And that rule

is applied to a transaction between the vendor or creditor and surety, as well as purchaser or principal; being thus stated in Brandt's Treatise, section 404: " A distinction has been taken between a misrepresentation of an existing fact and an unexecuted intention, and the latter has be been held not to be such a fraud as will discharge a surety." We think, therefore, the demurrer to that paragraph was properly sustained, and no reply to it was necessary.

The facts stated in the fourth paragraph clearly constitute a defense. In Woolley v. Louisville Banking Company, involving a similar question, it was held by this court that when a creditor as inducement to a person to become bound as surety falsely represents that he holds collateral security for the same debt, the surety will be released. In this case the representation was equivalent to an assurance that Mattingly, under the contract already made, would have possession and right to operate the mill without hindrance until November 3, 1889, when the last one of the three notes for $3,000 each fell due; but by provision in the deed subsequently made, without knowledge or consent of appellee, the right was given to appellant, upon the condition mentioned, to enforce its lien by sale of the property at any time, after November 3, 1887, thereby cutting off profits of the mill relied on by appellee as surety two years before it could have been done according to the contract as represented to him by appellant when he signed the note sued on.

In the case cited the misrepresentation appears to have been made by reason of misconception by the creditor of his legal right in respect to the collaterals; in this case it is alleged to have been intentional and fraudulent, but in

both alike the surety lost benefit of what he was induced by representation of the creditor to believe would be substantial and available means of indemnity. The jury was by the first instruction directed to find for appellant, unless they believed from the evidence its agent procured the signature of appellee to the note by false and fraudulent representation. That instruction is improper, because, given in general terms and without qualification, it authorized the jury to consider in support of and predicate a verdict for the defendant upon facts as stated in either one of the four paragraphs of the answer, although as already indicated only two of them, as they stand, contain enough to constitute a defense to the action. There should have been given an instruction based exclusively upon facts stated in the first paragraph of the answer, as we have numbered them, without reference to what is alleged in the second.

The second instruction being hypothecated upon proof of allegations contained in the fourth paragraph is unobjectionable, qualified as it is by a subsequent instruction involving the question whether the provision in the deed in regard to time the notes were to be treated as due, was made with knowledge and consent of appellee.

It naturally follows from the foregoing views that the representations of the first and fourth paragraphs, in order to constitute defenses to the action must: 1. Have been false ; 2. Appellee must have been ignorant of truth of the matter in reference to which they were made ; 3. They must have been made with intention that appellee would act upon them ; 4. He must have been thereby in whole or partly induced to sign the note.

Without referring in detail to instructions asked and

refused they ought, so far as relating to first and fourth paragraphs, and conforming to this opinion, to have been given, and of other instructions given no reference is necessary so far as they relate to the second and third paragraphs.

The judgment is reversed for new trial consistent with this opinion.