### ALPHER–KUR–GREENBERG CO. v. HOLOBER (two cases).

(Court of Appeals of District of Columbia. Submitted January 9, 1924. Decided March 3, 1924. Rehearing Denied March 25, 1924.)

Nos. 3977, 3978.

1. **Sales** ⟷53(3)—**In action on purchase-money note, evidence held not to support submission of issue of fraud.**

In action by jobber against indorser on purchase-money note for a stock of jewelry, evidence *held* not to support trial court's action in so modifying plaintiff's request as to submit the question of plaintiff's fraud.

2. **Fraud** ⟷58(1)—**Scintilla of evidence insufficient.**

A scintilla of evidence indicating fraud is insufficient to sustain a verdict based on fraud.

Van Orsdel, Associate Justice, dissenting.

Appeal from the Municipal Court of the District of Columbia.

Separate actions by the Alpher-Kur-Greenberg Company against Henry Holober. Judgments for defendant, and plaintiff brings error. Reversed.

Morris Simon, L. Koenigsberger, and Eugene Young, all of Washington, D. C., for plaintiff in error.

W. Bissell Thomas, of Washington, D. C., for defendant in error.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. These are writs of error by which Alpher-Kur-Greenberg Company, a corporation, seeks to have reversed judgments of the municipal court. Both cases were tried upon the same evidence, and are governed by the same principles of law.

[1] The plaintiff in error, who is a jobber in jewelry, sold a bill of goods to one I. Holober, brother-in-law of the defendant in error, for which it received four promissory notes, signed by I. Holober, and indorsed by the defendant in error. The latter defended on the ground that all the goods charged for were not delivered, that some of those delivered were returned, that the plaintiff in error had fraudulently misrepresented the value and character of the goods, and that they had been tendered back to it, but that it refused to receive them. At the close of the testimony plaintiff in error requested the following instruction:

---

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The jury are instructed that their verdict should be for the plaintiff for the amount sued for, less the price of goods charged for and not delivered, if any, and less, also, the price of such goods, if any, as were returned by I. Holober to the plaintiff, and agreed by the plaintiff to be credited on the notes in suit."

The instruction requested was denied, but was modified by the court by adding thereto the words, "provided the jury believe from the evidence that no fraud was perpetrated by the plaintiff in the transaction," and, as thus modified, was given. The refusal of the court to give the instruction as requested is assigned as error; so is the action of the court in modifying it. Plaintiff in error argues that there was no evidence tending to show fraud, and therefore that it was entitled to the instruction as requested.

I. Holober testified that he was a watch repairer, a business which he had followed practically all of his life; that he had no experience in the jewelry business prior to the purchase of the goods in question; that he had $1,000 to invest, and determined to engage in the jewelry business; that at the request of a representative of the plaintiff in error he called at its place of business, was shown some merchandise, and told, "This is the merchandise you will need over there;" that this was late in the afternoon—about closing time; that when he came back the next day the representative had a quantity of goods packed up and said to him, "I have got just a nice stock for you," at a cost of $2,900; that he had not that much money, and so asked his brother-in-law, defendant in error, if he would indorse his notes for the purchase of the goods; that after the goods were delivered to him he checked them, and found that some were missing. Soon after having opened the goods he sent for Mr. Kur, president of the corporation, and said to him, "I am overcharged between 100 and 350 per cent.;" that the first time he found that articles that had been sold to him for gold were brass was when a customer bought a chain supposed to be solid gold, which had been sold to him for solid gold, and for which he had paid the price of solid gold (but he does not say that the chain was not as represented, or how he learned the articles were brass); and that he did not have an opportunity to examine the goods before they were sent to him by the plaintiff in error, although he had seen some of them prior to that time. The goods for which the notes were given were delivered to him about the 10th of September, 1921. When three of the notes became due they were renewed, one on November 25, 1921, one on December 27, 1921, and one on January 25, 1922. In November, 1921, he stated to plaintiff in error that he had been cheated. In October or November, 1921, the exact date is not given, he purchased from plaintiff in error $600 worth of goods, in addition to those for which the notes had been given, and about the same time returned some of the original purchase. All of the original purchase had been disposed of by him, except about $1,200 worth, figured at the price charged him by plaintiff in error. At no time did he offer to return all the goods purchased and rescind the contract.

On March 2, 1922, he filed a petition in voluntary bankruptcy, in which he listed plaintiff in error as a creditor in the sum of $1,750, the amount sued for. An expert witness produced by defendant in

error said he could not determine whether a piece of goods was solid gold, gold-plated, or brass by looking at it; that jobbers take the manufacturers' word as to the character of the goods they buy.

The defendant in error testified that, when he was asked to sign the notes, he had an interview with Mr. Kur, and expressed to him the opinion that his brother-in-law was not justified in taking so large a bill of goods, because he did not see how he was going to pay for that much. Mr. Kur replied:

"Well, I know conditions in this town. I know the jewelry business from A to Z. Leave it entirely to me, and I will thresh it out for him. Leave it to me."

Defendant in error said to Kur that he knew Kur and one Alpher, an associate of Kur's, as honorable men, and that he supposed he had a good friend in Kur, to which the latter replied:

"Mr. Holober, that is the way I want you to feel, * * * because your brother-in-law has got a family to keep up, and I will see he is treated right."

Defendant in error said he depended on Kur's honesty to treat him right, but that, if he had known he had charged his brother-in-law 300 per cent. on his merchandise, he would not have signed the notes.

Defendant in error called a witness who testified to the profits made by jobbers in jewelry. He said one may charge 50 cents, another $2, another 90 cents, and another only 10 cents for the same article—that every jobber had a different price. A jeweler who had been in business in Washington for 34 years testified on behalf of plaintiff in error that the prices charged Holober were no higher than the prices charged for similar articles by other jobbers, and his testimony is uncontradicted. March 2, 1922, as we have stated, nearly seven months after he had begun business, Holober filed a petition in voluntary bankruptcy. Before he did so, defendant in error—not, remember, the purchaser of the goods—sent for Mr. Kur and asked him to take the merchandise back, but he would not do it. This is all the testimony relating to the question of fraud.

That there was a confidential relation between plaintiff in error and the two Holobers may be admitted, but what evidence is there to warrant the inference that the relation had been sinned against. There is no proof that the goods had been sold at an unreasonably high price. The testimony that Holober had declared to Kur, "I am overcharged between 100 and 350 per cent.," is not equivalent to testimony that he had been so charged. He might have told the truth when he said that he had made the statement to Kur, but the fact that he did so would not be proof that the statement was true. In another place he said:

"The first instance I found that articles had been sold to me for gold were brass was when a customer * * * had been in and bought a chain supposed to be solid gold, which had been sold to me as solid gold, and charged the price of solid gold."

He does not say that the chain was not exactly what it was supposed to be. True, he does say that it was then he learned for the first time that articles sold to him for gold were brass. While this is not a direct statement that they were brass, perhaps it warrants the inference

that they were. But he does not tell us how many articles there were, or whether they were worth 5 cents each, or $1 each. Certainly this was not enough on which to base a finding of fraud, in view of the fact that an expert put upon the stand by defendant in error had testified that he could not tell by looking at it whether a piece of goods was solid gold, gold plate, or brass—that jobbers accepted the word of the manufacturers as to the quality of the goods. If the goods were not as represented, that might be ground for rescission, but, taken alone, would not be proof of fraud. If the goods referred to were brass, there is nothing to show that the plaintiff in error knew it, or that the delivery of them was not the result of an innocent mistake. The defendant in error says that, if he had known the plaintiff in error had charged his brother-in-law 300 per cent. on his merchandise, he would not have signed the notes. This, however, is not the same as saying that he had charged that much.

[2] It may be that the records disclose a scintilla of evidence indicating fraud; but, if so, that would not be enough to sustain a verdict of wrongdoing. Commissioners of Marion County v. Clark, 94 U. S. 278, 24 L. Ed. 59; Carter v. Carusi, 112 U. S. 478, 484, 5 Sup. Ct. 281, 28 L. Ed. 820; Smith v. United States, 151 U. S. 50, 55, 14 Sup. Ct. 234, 38 L. Ed. 67. Between the statement of facts in the briefs of defendant in error and that contained in the records there is some difference, but we are bound to accept the records as stating the truth. A careful scrutiny of the records has failed to reveal sufficient evidence upon which to predicate verdicts to the effect that fraud had been committed upon the defendant in error.

We have examined Southern Trust Co. v. Lucas, 245 Fed. 286, 157 C. C. A. 478, and First National Bank v. Mattingly, 92 Ky. 650, 18 S. W. 940, cited by defendant in error, but we find nothing in these cases which militates against the views here expressed. The evidence of fraud in each of these cases is clear and convincing.

We think the court erred in failing to give, without modification, the requested instruction heretofore referred to. The judgments are reversed, with costs, and a new trial is awarded in each case.

Reversed.

VAN ORSDEL, Associate Justice, dissents.