RATHGABER, Appellant, v. HORTON, et al, Respondent.

(218 N. W. 148.)

(File No. 5771. Opinion filed February 28, 1928.)

*Schrader & Lewis,* of Rapid City, for Appellant.

*Bangs & Wood* and *Turner M. Rudesill,* all of Rapid City, for Respondent.

BURCH, P. J. This action is brought against the defendants William H. Horton and Anna Mary Sisley to recover $1,840 and interest on a promissory note given for the purchase of 22 head of horses. Defendant Horton did not answer, and judgment against him was rendered by default. Defendant Sisley answered,

admitting the execution and delivery of the note, that the plaintiff was the owner thereof, and that it had not been paid. For an affirmative defense she pleaded that she was a surety; that the note was without consideration, and obtained by fraud. The case was tried to a jury, and a verdict rendered in favor of said defendant. From the judgment rendered on the verdict and an order overruling a motion for new trial, plaintiff appeals.

After the jury was impaneled and sworn, appellant made an application for continuance of the trial until the following day in order to enable him to, obtain defendant Horton, as a witness. When this was presented, the court said:

"Let the record show that the court states to the plaintiff that, in order to accommodate them and set the trial back would entail additional expense to the county of about $75 and that the continuance will be granted upon condition of payment of said $75 by the plaintiff."

This was excepted to, the payment demanded was refused, and the case proceeded to trial. We think the action of the court was not an allowance of a continuance upon costs. The court had no right as a condition for allowing a continuance to tax additional expense that might be incurred by the county. There is no provision for such expenses to be paid by litigants in any event, and such cannot be deemed costs within the meaning of the statute (section 2617, R. C. 1919), allowing the court in its discretion to impose costs as a condition for granting a postponement of trial. Appellant was under no legal duty to accept the condition imposed, and his refusal to do so cannot be charged against him. The action of the court must be treated as an absolute denial of the application, since no legal condition was allowed for a continuance. Was the denial of a continuance prejudicial error? The postponement was asked until the following day only. The case was not finished or the evidence closed until about noon the following day, and, if there was error in the refusal of the court to continue the cause, it does not appear that appellant was prejudiced thereby.

Appellant offered in evidence the files of the court showing an attachment of land belonging to respondent, and, upon objection, such files were excluded. This ruling is assigned as error. Such files in no way tended to prove or disprove the issues and were immaterial. The court did not err in excluding such files.

Respondent and Horton appear as joint makers of the note, and the evidence shows that respondent was a surety, while Horton was the purchaser of the horses and the primary debtor. Appellant challenges the sufficiency of the evidence to support respondent's affirmative defense of fraud and failure of consideration, arguing that respondent as a surety cannot defeat a recovery against her by showing fraud on her principal. Before entering upon a discussion of this question, the following controlling facts are given: In April, 1918, appellant sold and delivered 22 head of horses to Horton for $1,840. The note in suit, signed by Horton and respondent, was given for this amount in payment of the horses. So far as the record discloses, all parties knew that respondent was surety for Horton, and that Horton was the purchaser of the horses. The evidence is sufficient to support the finding of the jury that the horses were "locoed" and practically worthless, although during the spring and summer of 1918 Horton worked a number of the horses in farming operations, some of the mares had colts, and one of the horses was traded to respondent for a dog, and afterwards sold by her for $3. It is claimed that appellant falsely represented the horses to be sound and healthy thereby defrauding Horton and respondent. Horton did not rescind the contract, but received and kept the horses, and, when sued upon the note, jointly with respondent, made no defense and suffered judgment to be taken against him for the full amount. The negotiations leading to the purchase of the horses appear to have been conducted between appellant on one side and Horton and respondent on the other. Respondent's testimony discloses that she and Horton went to the ranch of appellant and looked at the horses prior to purchasing them. She, Horton, and Rathgaber looked the horses over together and Horton asked what she thought of them. She said she did not like the looks of them because they looked poor and sick. Rathgaber told her the reason the horses were so poor was because they were big horses and were poorly wintered. She then told Rathgaber she thought they were locoed because their eyes were glassy and they stepped high, and Rathgaber said he would guarantee the horses were all right. She admits that she had had experience with locoed horses and knew the symptoms. The horses were afterwards delivered to Horton, and later, after the delivery of the horses, the note was executed.

Mr. Rathgaber obtained respondent's signature to the note when he and respondent were alone at respondent's home. The record does not disclose any statements made at that time claimed to be fraudulent.

▆▆ Under the foregoing facts, can respondent, as surety, avail herself of the fraud perpetrated in the sale of diseased horses to Horton, or escape liability on the ground of failure of consideration by reason of their worthlessness? Brandt on Suretyship, vol. 1, § 3, says a surety "is bound only to the same extent as his principal, and whatever defense the principal succeeds in making inures to the benefit of the surety." Horton made no defense and there is no success of his to inure to the benefit of respondent. It is also quite generally held that, where a principal rescinds, the surety may, when sued separately from the principal, take advantage of his principal's act of rescission. But Horton did not rescind. The general rule is that the liability of a surety is no greater than that of the principal, but defenses personal to the principal are available only to the principal and do not pass to the surety. Where the principal waives such personal defenses and becomes bound, the surety may not set up such defenses in his favor. In Stockton Sav. & Loan Soc. v. Giddings, 96 Cal 84, 91, 30 P. 1016, 1019, 21 L. R. A. 406-409 (31 Am. St. Rep. 181), the court said:

"It is sometimes said that fraud vitiates the contract, but ordinarily that only means that a party may avoid the contract on that ground, but, if he does not elect to do so, he is bound by his contract, and in such case the surety cannot set it up as a defense."

▆ In other words, a surety cannot be held to a greater liability than the principal, but can generally be held to the same, unless released by some act affecting the contract of suretyship, and cannot urge a defense personal to the principal solely for the purpose of reducing the principal's liability and thereby incidentally reducing the surety's liability. Respondent admits that she cannot defeat a recovery against her for fraudulent statements made to Horton, but insists that she may do so where the fraudulent statements were made to her. Of course if false and fraudulent statements were made to her concerning her contract of suretyship to induce her to become a surety, she may plead such fraud to avoid her contract. Such plea is personal to her, and does not affect the

rights between her principal and his creditor. In such case she is not defending her principal's action to reduce her liability through a reduction of his, but is defending in her own right. In this case, if the fraud had consisted in false representations to induce her to sign the note with Horton, her right to set up such fraud would be obvious, but, because the representations made were concerning the quality of the horses sold to Horton, it is not so plain that the fraud complained of affects her contract. However, the representations may be a fraud on both. If she had been a joint purchaser of the horses, it would be plain that she was thereby defrauded. As a surety, in the absence of a showing that Horton is insolvent, it may not be as plain that her contract was induced by the representations, but, if she would not have signed the note without the false representations and was induced by fraud to enter into her contract, she may rescind it, although Horton may not elect to rescind his contract.

The evidence in this case shows that respondent was a party to the negotiations for the purchase of the horses, resulting in the giving of the note in suit. Merely because she did not acquire a beneficial interest in the subject of the sale did not make her any less a party to the transaction. She was not acting in a representative capacity or as an agent of Horton, but was acting in her own right and for herself. She might have consented to sign a note to pay for horses bought by Horton. But she was not obliged to do so. She had a right to go with Horton and participate in the transaction and become surety for him only in the event that a deal satisfactory to her was made. She chose the latter course. Because Horton is satisfied to waive a fraud perpetrated on him, does not require her to waive a fraud on her or prevent her insisting upon the contract she made. We cannot presume that she was not interested in the contract simply because she was not to become a joint owner of the property purchased. It is not difficult to understand that one might be willing to stand as surety on a note in settlement of a sound investment of his principal, where he would not be willing to do so on an unsound investment, and, if not willing to trust the principal to make a sound investment, might insist on being consulted in the transaction, thereby becoming a party to it. If fraud enters into the transaction and the surety is deceived, the surety may take advan-

tage of such fraud, irrespective of its effect upon the principal or his rights. In the text of 32 Cyc. 60, it is said:

"If the surety sign a note for the purchase of property, any fraudulent misstatement in regard to such property frees him from liability"—citing (Satterfield v. Spier, 114 Ga. 127, 39 S. E. 930; Stanford First Nat. Bank v. Mattingly, 92 Ky. 650, 18 S. W. 940, 14 Ky. Law Rep. 68.

■ By such fraud the surety is subjected to a risk greater than intended. There is evidence that she demanded to be released on discovery of the fraud, and, as she had none of the consideration to return, her rescission was complete. The evidence is sufficient to support the verdict in her favor, and she had a right to defend the action in her own right for the fraud practiced on her.

■ It is argued that she was acquainted with the symptoms of loco and had no right to rely on appellant's representations. It is not claimed she knew the horses were locoed, but she feared they might be. It was a fraud on her to allay her fears by knowingly making false statements inducing her to make the deal, where she would not otherwise have done so.

Finding no error in the record, the judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.